FILED
JUN 24 2005

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SI TANKA UNIVERSITY, | CIV 05-3012 |
| Appellant, | |
| -vs- | ORDER AND OPINION |
| UNITED STATES DEPARTMENT OF EDUCATION, | |
| Appellee. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## INTRODUCTION

Si Tanka University filed a voluntary Chapter 11 petition in the United States Bankruptcy Court on April 9, 2005. Si Tanka listed over $5 million in unsecured debts, including an unsecured debt in the amount of $58,300 to the United States Department of Education ("the Department"). On April 25, 2005, Si Tanka received a notice from the Department that it was revoking the University's rights to participate in the Provisional Program Participation Agreement ("PPA"), which agreement had enabled Si Tanka to participate in the Department's federal student loan and grant programs and federal institutional grant programs. The Department's notice specifically stated that the reason for Si Tanka's loss of eligibility was its filing for Chapter 11 bankruptcy relief.

Si Tanka filed an adversary proceeding in the United States Bankruptcy Court on May 5, 2005, seeking injunctive and declaratory relief pursuant to 11 U.S.C. § 525, the Bankruptcy Code's prohibition of discrimination against debtors. Si Tanka sought a preliminary injunction preventing the Department from revoking Si Tanka's right to participate in the federal student financial aid funding program administered by the Department. The Bankruptcy Court denied the motion for a preliminary injunction on May 12, 2005. Si Tanka filed a timely notice of appeal and a motion for leave to appeal pursuant to 28 U.S.C. § 158(a) in the Bankruptcy Court on May 20, 2005. Fed. R. Bank. P. 8002(a). The motion for leave to appeal was transmitted to the Clerk and docketed in this Court on May 31, 2005. Fed. R. Bank. P. 8003(b).

## DECISION

The District Courts have jurisdiction to hear appeals "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in [proceedings arising under title 11 or arising in or related to a case under title 11]." 28 U.S.C. § 158(a)[1]. "Because neither this statute nor the Bankruptcy Rules specify the standard by which district courts are to allow interlocutory appeals, many district courts use the standard contained in 28 U.S.C. § 1292(b), which governs interlocutory appeals from district courts to courts of appeal." Matter of Zech, 185 B.R. 334, 336-37 (D.Neb. 1995) (*citing* In re Kroh Bros. Dev. Co., 101 B.R. 1000, 1004 (W.D.Mo.1989); In re Total Transp., Inc., 84 B.R. 590, 591-92 (D.Minn.1988); In re: Ewald Bros., Inc., 1985 WL 1551, p. 1 (D.Minn.1985); and 1 Collier on Bankruptcy ¶ 3.03[d][I], at 3-196 (15th ed. 1995)). *Accord* In re Dino's Inc., 183 B.R. 779, 781 (S.D. Ohio 1995), and In re MCORP Financial, 139 B.R. 820, 823 (S.D. Tex. 1992). This is also "the approach that typically has been used by the Eighth Circuit Bankruptcy Appellate Panel in deciding whether to grant a motion for leave to appeal." In re BTR Partnership, 292 B.R. 188, 194 (D.Neb. 2003) (*citing* In re Machinery, Inc., 275 B.R. 303, 306 (8th Cir. BAP 2002)[2].

> Certification under section 1292(b) requires that: "(1) the question involved be one of law; (2) the question be controlling; (3) there exists a substantial ground for difference of opinion respecting the correctness of the [bankruptcy] court's decision; and (4) a finding that an immediate appeal would materially advance the ultimate termination of the litigation."

---

[1] Appellant further contends that this court has jurisdiction pursuant to 28 U.S.C. § 1292. That section governs appeals to the United States Courts of Appeal.

[2] The minority approach is expressed in In Re Hayes Bankruptcy, 220 B.R. 57, 59 (N.D. Iowa 1998) ("Nothing in the text of § 158(a)(3) indicates a limit to the district court's discretion. Perhaps more importantly, nothing in the statutory or constitutional relationship between district and bankruptcy courts reveals any reason why a district court must decline review when the strict requirements of § 1292(b) are not met. Since the bankruptcy court is a "unit of the district court," *see* 28 U.S.C. § 151, its adjudicatory authority flows from that of the district court, and the district court may review decisions of the bankruptcy court as freely as it may review its own decisions."). Chief Judge Melloy did note, however, that "Nevertheless, district courts exercise this discretionary power of review with care, and with an eye toward safeguarding the bankruptcy court's role as the initial and in some respects primary forum for the adjudication of bankruptcy disputes." *Id*. *See also*, ICMR, Inc. v. Tri-City Foods, Inc., 100 B.R. 51, 53-4 (D. Kan. 1989).

2

*Id.* "However, granting leave to file interlocutory appeals is the exception, not the rule, and such appeals should be granted only where extraordinary circumstances exist which override the general policy against piecemeal litigation, or where ultimate determination of the entire litigation would be advanced." Matter of Zech, 185 B.R. at 337. "Indeed, because interlocutory appeals interfere with the cumulative goal of the bankruptcy system, expeditious resolution of pressing economic difficulties, they are not favored." *Id.* (*quoting* In re Kroh Bros. Dev. Co., 101 B.R. at 1007).

The facts were stipulated to by the parties below. The question presented to the Bankruptcy Court was one of law, the same question presented by the adversary proceeding itself: whether the Department's termination of the PPA violated the Bankruptcy Code's prohibition of discrimination against debtors set forth in 11 U.S.C. § 525. The motion for a preliminary injunction against the department was denied based upon the finding that Si Tanka was not likely to prevail upon the merits of its adversary claim.[3] This appeal satisfies the first two requirements of 28 U.S.C. § 1292(b) that the question involved be one of law and that the question is controlling. However, Si Tanka cannot, as set forth below, demonstrate that there exists a substantial ground for difference of opinion respecting the correctness of the bankruptcy court's decision.

The Bankruptcy Code's prohibition against discrimination against debtors provides:

> Except as provided in [statutes not applicable here] a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

---

[3]Judge Hoyt issued oral findings and conclusions. The transcript of that proceeding was not provided by either party but the Court has obtained and reviewed a recording of that proceeding.

3

11 U.S.C. 525(a). There is no question that, on the face of it, the Department, a governmental unit, took action to revoke a grant by terminating the PPA solely because Si Tanka filed for bankruptcy. However, the Department did so based upon eligibility criteria under the Higher Education Act.

Title IV of the Higher Education Act, 20 U.S.C. §§ 1070-1099, governs federally funded student financial aid programs for colleges and post-secondary vocational training. In 1992, Congress amended the Higher Education Act to provide that:

> An institution shall not be considered to meet the definition of an institution of higher education if the institution . . . has filed for bankruptcy.

20 U.S.C. § 1088(a)(4) (1992), PL 102-325, re-codified at 20 U.S.C. § 1002(a)(4) by the Higher Education Amendments of 1998, PL 105-244. The legislative history of that amendment is clear:

> In amending this section of the Higher Education Act, the Committee intends to improve the integrity of the Federal student assistance programs . . . The Committee intends that institutions who file for bankruptcy will be automatically ineligible to participate in Title IV.

H.Rep. 102-447, at 73-74, 1992 U.S.C.C.A.N. 334 at 406-07. Following the 1992 amendment, the Department issued regulations which provide, in part that

> For purposes of title IV of the HEA, an educational institution that otherwise satisfies the requirements contained in §§ 600.4, 600.5, or 600.6 nevertheless does not qualify as an eligible institution under this part if . . . [t]he institution . . . [f]iles for relief in bankruptcy.

34 C.F.R. 600.7(a)(2)(A). The Department relied upon this regulation when it notified Si Tanka that its PPA was terminated.

Judge Hoyt, in denying Si Tanka's motion for a preliminary injunction, determined that Si Tanka was not likely to prevail on the merits of its declaratory action claiming that the Department's notice of termination violated the anti-discrimination provision of the Bankruptcy Act based upon the amendments to the Higher Education Act and based upon the only two opinions found by the Court to have addressed the application of those statutes.

In In re Betty Owen Schools, Inc., 195 B.R. 23 (S.D. NY 1996), the bankruptcy court examined Congressional intent in enacting 11 U.S.C. § 525 and 20 U.S.C. 1002(a)(4).

> In its defense, the Department asserts that Congress acted unequivocally to exclude schools which have filed bankruptcy from participating in federal

4

student loan and grant programs. As illustrative of its intent, Congress amended sections 541 and 362 of the Bankruptcy Code through the Student Loan Default Prevention Initiative Act of 1990, as contained within the Omnibus Reconciliation Act of 1990. "Property of the estate," as defined in section 541, was amended to exclude "[a]ny eligibility of the debtor to participate in programs authorized under [HEA]." 11 U.S.C. § 541(b)(1). Similarly, pursuant to the same act, Congress determined that "any action . . . regarding the eligibility of the debtor to participate in programs under [HEA]" is exempted from the "automatic stay. 11 U.S.C. § 362(b)(16).

Two years subsequent to the aforementioned amendments to the Bankruptcy Code, Congress amended section 1088(a) of the HEA to exclude an "institution [that] has filed for bankruptcy" from the definition of "an institution of higher education." 20 U.S.C. § 1088(a)(4). The purpose of amending the HEA was to improve the public confidence in the student financial aid programs by raising the quality of eligible schools. S.Rep. No. 102-204, 102d Cong., 1st Sess. at 3, 44 (1991). Specifically, to ensure that schools are financially strong, it was intended that institutions which filed for bankruptcy will automatically be ineligible to participate in HEA programs. H.Rep. 102-447, 102d Cong., 2nd Sess. at 73-74 (1992). Therefore, it is clear from the legislative history that Congress intended to limit educational assistance resources from financially unsound institutions, including schools which have filed for bankruptcy.

In re Betty Owen Schools, 195 B.R. at 31-32.

The debtor in In re Betty Owen Schools argued that, because Congress neglected to amend § 525(a) to exclude the Department from its reach, Congress intended to bind the Department to § 525(a). The Bankruptcy Court reasoned:

Preliminarily, it is this Court's observation that this is an issue of first impression as there are no other cases dealing with this irreconcilable inconsistency between section 525(a) of the Bankruptcy Code and section 1088(a)(4) of the HEA. Nor can this Court find a case deciding whether section 525(a) should be applied to invalidate another statute which specifically excludes an entity in bankruptcy from participating in a federal program . . .

There are several maxims of statutory interpretation applicable when two statutes conflict. One of the canons of statutory interpretation is that "courts are bound by Congressional judgments that general bankruptcy policy give way to more specific policy considerations." Congress' desire to give the debtor a "fresh start" is but one of the several policies which

5

> may often come into conflict with another. As previously discussed, section 525 was enacted to further this "fresh start" policy. However, the "fresh start" for schools relying on federal or state funding has already been proscribed by the recent amendments to sections 362(b) and 541(b) of the Bankruptcy Code. In fact, the Senate Report on "Abuses in Federal Student Aid Programs" specifically cites to instances when institutions take refuge in bankruptcy to prevent the accrediting agencies, i.e., the Department, from taking action to conserve the scarce funds even when the debtor school may not be able to make loan refund payments to former students and may continue to admit new students despite the fact that the school may close or otherwise cut back its educational program. S.Rep. 102-58, 102nd Cong., 1st Sess. Thus, there is ample evidence that Congress intended to curtail the "fresh start" of a debtor school which relies on federal funding.

In re Betty Owen Schools, 195 B.R. at 32-33 (internal citations omitted).

Judge Hoyt also relied upon New York Institute of Dietetics, Inc. v. Riley, 966 F.Supp. 1300, 1316 (S.D. NY), the only other case he found addressing the issue present here. That case is not directly on point but did hold that it was not discrimination on the basis of bankruptcy to consider the bankruptcy of an affiliated school in denying Title IV participation to a school, given the mandate of what is now 11 U.S.C. § 1002(a)(4).

After review of the relevant statutes and their legislative history, I cannot conclude that there exists a substantial ground for difference of opinion respecting the correctness of Judge Hoyt's decision. Leave to appeal should therefore be denied.

Now, therefore,

IT IS ORDERED that Si Tanka's motion for leave to appeal is denied.

Dated this 24th day of June, 2005.

BY THE COURT:

_____
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
                    DEPUTY
(SEAL)